RECEIVED
IN ALEXANDRIA, LA.
NOV 1 4 2013
TONY R. MOORE, CLERK
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LONNIE HARPER** | : | **DOCKET NO. 13-02537** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **BOISE PAPER HOLDINGS, LLC** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a "Motion to Dismiss" ( R. #13) filed by defendant, Boise Paper Holdings, LLC wherein the mover seeks to dismiss the instant lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6). Boise Paper Holdings, LLC ("Boise") contends that plaintiff's claims fail as a matter of law due to worker's compensation law's exclusivity. Plaintiff, Lonnie Harper, opposes the motion. For the following reasons, the motion will be granted dismissing defendant Boise from the instant lawsuit.

## FACTUAL ALLEGATIONS

Plaintiff makes the following allegations in his complaint. On or about August 6, 2012, Lonnie Harper was employed by the Boise Paper Mill, then owned by Boise Paper Holdings, LLC. Mr. Harper's work assignment included operating a lime kiln grinder. At some point the grinder became clogged with by-product which had coagulated causing the grinder to shut down. Using a 50 pound metal pry bar, Mr. Harper attempted to dislodge the by-product, however, in doing so, a large boulder of waste material crashed into the pry bar and slammed it against his head causing unconsciousness and injury. Mr. Harper was air-lifted via vac helicopter/ambulance to St. Patrick's Hospital in Lake Charles, Louisiana.

Defendant, METSO Paper USA, INC. d/b/a METSO AUTOMATION USA, INC. ("METSO"), developed the software and engineering program used by Boise that was intended to regulate and maintain a constant and consistent feed of product through the lime kiln grinder in order to mainstream and create a uniform size of the pellet products passing through the grinder itself. Mr. Harper asserts that the computer program had failed causing the grinder to become clogged with by-product. Plaintiff contends that defendants' actions were intentional because even though the operators of the grinder had contacted METSO on numerous occasions months before the accident, via a toll free number, no action was taken to remedy the problem. Mr. Harper alleges that Boise knew or reasonably should have known of the hazard which caused his injury, but failed to make the appropriate changes to the system to avoid injuries. Mr. Harper argues that Boise's conduct rises to the level of gross negligence taking his claims outside the scope of Louisiana's workers compensation laws.

Mr. Harper further alleges that Boise's former safety supervisor for the paper mill had the company doctor release him to work in an effort to obfuscate and masquerade around the fact that this catastrophic event resulted in lost man hours. Mr. Harper complains that Boise's supervisor demanded that he return to work in a critical condition in order to prevent a "lost time accident." Mr. Harper asserts that the supervisor's conduct was an intentional infliction of emotional distress by placing corporate profits over patient safety in an effort to hide the fact of his injury.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

2

to relief.'"[1] Subsumed within the rigorous standard of the Conley test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[2] The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[3] In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[4] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[5] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[6] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[7]

Under Rule 8 of the Federal Rules of civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[8] A complaint that offers "labels and conclusions:" or

---

[1] Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

[2] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[3] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

[4] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

[5] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[6] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

[7] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[8] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

"a formulaic recitation of the elements of a cause of action will not do."[9] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[10]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[11]

## LAW AND ANALYSIS

The complaint alleges two causes of action: (1) the intentional tort associated with the removal of safeguards that resulted in Mr. Harper's injuries, and (2) the intentional tort of infliction of emotional distress allegedly caused by the safety supervisor who demanded that plaintiff return to work to avoid a lost time accident. Boise maintains that even though plaintiff labels these actions as intentional, they are based on negligence and thus plaintiff's only remedy would be pursuant to Louisiana's workers compensation law.

An employee injured in the course of his employment is generally not allowed to recover tort damages against his employer.[12] The employee's exclusive remedy lies with Louisiana's worker's compensation law unless the employee's injuries are the result of an intentional act. Louisiana Revised Statute 23:1032(A)(1)(a) provides as follows:

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the

---

[9] Id.

[10] Id., at 557, 127 S.Ct. 1955.

[11] Id., at 570, 127 S.Ct. 1955.

[12] Clinton v. Reigel By-PRoducts, Inc., 965 So.2d 1006 (La.App. 2d Cir. 1006), writ not considered, 976 So.2d 168 (La. 02/15/08).

4

future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

The intentional act exception to worker's compensation is narrowly construed.[13] The Louisiana Supreme Court has defined "intentional act" as when a "person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[14]

Substantially certain to follow requires more than a reasonable probability that an injury will occur, and "certain" has been defined to mean "inevitable" or "incapable of failing."[15] Gross negligence does not equate to an intentional act, nor does the failure to provide safety equipment or a violation of safety standards typically suffice to establish liability under the intentional act exception.[16]

Mr. Harper alleges that Boise removed a grate on the opening of the grinder that received product. Boise then used an altered formula to mix the product being ground. The mixture would create large, bulky masses of the product; the removal of the grate purportedly allowed large masses to pass into the grinder and clog it causing the grinder to stop. Boise employees would use a 50 pound pry bar to dislodge the bulky material and unclog the machine which is how Mr. Harper was injured on August 6, 2012.

---

[13] Reeves v. Structural Preservation Systems, 731 So.2d 208 (La. 03/12/99).

[14] Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).

[15] Reeves, 731 So.2d at 213.

[16] Id.

Mr. Harper alleges that he and other employees contacted METSO about the clogging problems to no avail. Hence, he alleges that Boise knew or reasonably should have known of the hazards created by the clogging, yet failed to make appropriate changes. Mr. Harper alleges that Boise's failure to take action regarding the clogging of the grinder is gross negligence and that such neglect became an intentional risk to the operators of the grinder.

"[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement."[17] "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."[18] The court has carefully reviewed and considered Mr. Harper's complaint and finds that the allegations do not meet the strict requirements of the intentional act exception but instead the allegations fall within the range of negligent acts covered by Louisiana's worker's compensation law.

Next, Mr. Harper maintains that Boise's act of demanding that he return to work in order to avoid an OSHA reportable is sufficient to establish a claim for infliction of emotional distress. To establish this claim, Mr. Harper must show that (1) defendant's conduct was extreme and outrageous; (2) he suffered severe emotional distress; and (3) defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result.[19]

In his complaint, Mr. Harper alleges the following:

---

[17] Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4 Cir. 1993), writ denied, 629 So.2d 347 (La.1993).

[18] Id. citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4 Cir. 1991)).

[19] White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).

6

16.
Realizing the significance of the injury sustained to Mr. Harper, Boise dispatched its former safety director, David Ludolph, to the St. Patrick's Hospital where he assumed manipulative control over the care being rendered to Lonnie Harper. David Ludolph in his capacity as the safety supervisor for the papermill had Boise's company doctor, Dr. Flynn Taylor, release Mr. Harper to work in an effort to obfuscate and masquerade around the fact that this catastrophic event resulted in lost man hours.

17.
At the behest of Boise, David Ludolph literally demanded that Lonnie Harper return to work while he was in a critical condition because of his head injury for no other purpose than to pretend for industrial purposes that there was no "lost time accident". David Ludolph, in his capacity as the safety supervisor, did so as an intentional infliction of emotional distress by placing corporate profits over patient safety in an effort to hide the fact of this injury, and the fact that this injury was a "lost time accident" for the paper mill. A later investigation by OSHA finding against the actions of Boise proved as such.

Taking the allegations as true, the court finds that defendant's conduct, as insensitive as it was, does not rise to the level necessary for a claim of intentional infliction of emotional distress. Accordingly, Mr. Harper's claim of intentional infliction of emotional distress will be dismissed.

## CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted dismissing with prejudice all claims against Boise Paper Holdings, LLC in the instant lawsuit.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 14th day of November, 2013.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE